**CONGRESO de UNIONES IN-DUSTRIALES de PUER-TO RICO, Petitioner,**

**v.**

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 91–1959.**

United States Court of Appeals, First Circuit.

Heard March 3, 1992.

Decided June 11, 1992.

Nicolas Delgado Figueroa, San Juan, P.R., for petitioner.

John D. Burgoyne, Asst. General Counsel, with whom Jerry M. Hunter, General Counsel, D. Randall Frye, Acting Deputy General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, N.L.R.B., Washington, D.C., were on brief, for respondent.

Before BREYER, Chief Judge, SELYA and CYR, Circuit Judges.

BREYER, Chief Judge.

We review a determination of the National Labor Relations Board (the "Board") that an employer, a wholly-owned subsidiary of another company, need not furnish a union with a relevant document when the employer's *parent* company has possession of the document. The Board's decision, as written, appears inconsistent with relevant Board precedent. *See, e.g., Shaw's Supermarkets, Inc. v. NLRB,* 884 F.2d 34 (1st Cir.1989). We therefore vacate that decision and remand for further proceedings.

**I**

*Background*

Before April 1990, the Rice Growers Association of California ("RG California") shipped California short-grained rice in bulk to its wholly-owned Puerto Rico subsidiary ("RG Puerto Rico"). RG Puerto

Rico's fifty-four unionized employees would unload the bulk rice from ships and package it for distribution in Puerto Rico. In early 1990, an RG California executive met with the RG Puerto Rico employees and told them that, due to a new consumer taste for *medium*-grained rice, RG Puerto Rico would likely close its short-grained rice processing plant and operation.

Congreso de Uniones Industriales de Puerto Rico, the union representing the RG Puerto Rico employees (the "Union"), began to bargain with RG Puerto Rico about severance pay. The parties eventually reached a stalemate about whether their collective bargaining agreement's "mechanization clause" (providing for 2,800 hours of severance pay) applied to the proposed plant closing.

While the bargaining was in progress, the Union asked RG Puerto Rico to provide various items of information, including (1) 1988 and 1989 financial statements, and (2) a "copy of the signed contracts that [RG Puerto Rico] has with Casera Foods Inc., inasmuch as ... the latter is distributing the rice which our members used to process...." When RG Puerto Rico refused to comply, the Union, and eventually the Board's General Counsel, brought unfair labor practice charges. 29 U.S.C. §§ 158(a)(1), (5). An administrative law judge dismissed the charges in respect to the financial statements, concluding that the company's past financial condition had nothing to do with the disagreement about severance pay. The ALJ found, however, that the contract with Casera Foods, Inc. ("Casera") might be relevant. The ALJ thought the contract might give rise to a claim by displaced union employees for "wrongfully subcontracting out unit work" and might support a union proposal "leading to the revival of a limited facet" of RG Puerto Rico's loading and packaging operations. Hence, the ALJ concluded that RG Puerto Rico committed an unfair labor practice in failing to give the Union a copy.

RG Puerto Rico appealed the ALJ's decision to the Board itself. In doing so, it pointed out, apparently for the first time, that the contract in question was not a contract between Casera and RG Puerto Rico, but rather a contract between Casera and RG California (RG Puerto Rico's parent). The Board, noting that RG California "has not been joined as a party to this case" and that "no effort" had been made to show that RG California and RG Puerto Rico "were a single employer" or "alter ego[s]," overturned the ALJ's decision. The Board ordered the unfair labor practice complaint dismissed. The Union now asks us to review the Board's determination.

II

*The Inconsistency*

■ For purpose of this appeal, we shall treat, as did the Board, the Union's information request—for a contract between *RG Puerto Rico* and Casera—as if it were a request for the right document (the *RG California*/Casera contract) but made to the wrong company. We also accept the Board's conclusion that the Union did not present the Board with good reasons or evidence sufficient to warrant treating RG California and RG Puerto Rico as if they were a "single employer" or "alter egos." *See, e.g., C.E.K. Indus. Mechanical Contractors, Inc. v. NLRB*, 921 F.2d 350, 354 & n. 5 (1st Cir.1990) (discussing single employer and alter ego tests as applied in certain collective bargaining contexts); *NLRB v. Fullerton Transfer & Storage Ltd.*, 910 F.2d 331, 335–40 (6th Cir.1990) (discussing alter ego doctrine under federal common law). Nonetheless, we do not see how the Board can square its decision here with a substantial line of Board authority requiring an employer, confronted with an information request, to make reasonable efforts to obtain the relevant information from another corporation, such as a parent company. *See Arch of West Virginia, Inc.*, 1991 WL 197719 (N.L.R.B.); *Public Serv. Co.*, 1991 WL 17065 (N.L.R.B.); *United Graphics, Inc.*, 281 NLRB 463 (1986); *Doubarn Sheet Metal, Inc.*, 243 NLRB 821 (1979). *See also International Bhd. of Firemen and Oilers*, 1991 WL 135192 (N.L.R.B.); *NLRB v. Rockwell–Standard Corp., etc.*, 410 F.2d 953, 958 (6th Cir.1969), *enforcing* 166 NLRB 124 (1967). *Cf. NLRB v. Borden, Inc., Borden*

*Chemical Div.*, 600 F.2d 313, 318 (1st Cir. 1979) (employer has "an obligation to make a reasonably diligent effort to obtain relevant information").

In *Arch of West Virginia, Inc.*, for example, the Board found an unfair labor practice arising, in part, out of a firm's failure to obtain lawfully requested information from its parent—information that the firm had simply said was "not in its possession or otherwise available to it." The Board wrote:

> The Respondent [i.e., the firm] has not shown that it has requested any information not in its possession from its parent corporation and sister subsidiaries and that they have refused to provide the Respondent with such additional information. Under these circumstances, the Respondent has failed to demonstrate that such information is unavailable.

1991 WL 197719 (N.L.R.B.) at n. 1. Similarly, in *United Graphics, Inc.*, the Board held that an employer's "defense based on nonpossession of the requested information" was "without merit," since the employer failed to present evidence that it had requested the information from a third party that had previously furnished related materials. 1986 WL 54338 at 5. Further, in *NLRB v. Rockwell–Standard Corp., etc.*, the court held that an employer was obliged to turn over information unless it could show, not only that it "did not have," but also that it *"could not obtain* the requested information." 410 F.2d at 956 (emphasis added). And in *International Bhd. of Firemen and Oilers*, the Board, citing both *United Graphics* and *Rockwell–Standard*, declared that,

> We have extended the employer's duty to supply relevant information during grievance processing to situations where that information is not in the employer's possession, but where the information likely can be obtained from a third party with whom the employer has a business relationship that is directly implicated in the alleged breach of the collective-bargaining agreement.

1991 WL 135192 at 2.

The record before us, and before the Board, contains evidence that RG Puerto Rico might obtain the contract in question simply by asking its parent to provide it. In its defense of the ALJ's decision before the Board (arguing then on the side of the petitioner rather than the respondent), the Board's General Counsel pointed out that the parent company, RG California, itself decided to close RG Puerto Rico's rice processing plant, and that an executive from RG California came to Puerto Rico to present the decision to the Union. Nothing in the record suggests that RG California would have refused to provide the contract copy if requested. Indeed, RG Puerto Rico, before the ALJ, refused to provide the contract, *not* because it could not obtain a copy, but because, in its view, the contract was not relevant to any issue involved in the bargaining.

The Board, on this appeal, has not pointed to any factual evidence suggesting that RG Puerto Rico could not obtain a copy of the contract from its parent, nor has it pointed to any Board authority denying such an obligation. To the contrary, as the Board itself declares, the authority it cites indicates that an employer "is not obligated by the statute to provide the other party with information it does not have and *cannot reasonably be expected to obtain.*" NLRB Br. at 7 (emphasis added). *See, e.g., Korn Indus., Inc. v. NLRB*, 389 F.2d 117, 123 (4th Cir.1967) (employer "cannot be required to furnish information which is not available to it"); *NLRB v. United Brass Works, Inc.*, 287 F.2d 689, 696–97 (4th Cir.1961) (employer need not furnish information about job classifications it had not yet formulated and, hence, "did not possess"); *NLRB v. Rockwell–Standard Corp., etc.*, 410 F.2d 953, 958 (6th Cir.1969), *enforcing* 166 NLRB 124 (1967) (employer must furnish information absent showing it "did not have and could not obtain the requested information"). Two other cases cited by respondent, *Food & Commercial Workers Local 1439 (Layman's Market)*, 268 NLRB 780 (1984) and *American Commercial Lines, Inc.*, 291 NLRB 1066 (1988), describe situations where the petitioner had equal access to the requested information (possessed by employee trust funds), and thus seem distinguishable. *Cf. Public Service Co.*, 1991 WL 17065 (N.L.R.B.) (distinguishing *Layman's Market* ).

■ Of course, as we and other courts have often said, an agency need not follow each and every detail of all prior precedent. But, it cannot depart *significantly* from prior precedent

> without explicitly recognizing that it is doing so and explaining why.... 'Whatever the ground for departure from prior norms, ... it must be clearly set forth so that the reviewing court may understand the basis of the agency's action and so may judge the consistency of that action with the agency's mandate....' '[T]here may not be a rule for Monday, another for Tuesday....'

*Shaw's Supermarkets, Inc. v. NLRB*, 884 F.2d 34, 36–37 (1st Cir.1989) (citations omitted). In the case before us, the Board seems to have departed from precedent that requires a company to offer some showing that it has made "reasonable efforts" to obtain the requested information. If there is some clear basis for distinguishing this case from past precedent, the Board has not explained it.

The decision of the Board is vacated and the case is remanded for proceedings consistent with this decision.

*So Ordered.*