27 F.3d 1
 Ricardo DAVILA-BARDALES, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 93-2124.
 United States Court of Appeals,
First Circuit.
 Heard June 7, 1994.
Decided June 23, 1994.
 
 Victoria Lewis with whom Greater Boston Legal Services, Boston, MA, was on brief for petitioner.
 Iris Gomez, Massachusetts Law Reform Institute, Boston, MA, on brief for Massachusetts Immigrant and Refugee Advocacy Coalition, Anthony J. DeMarco, Lynn, MA, on brief for Children's Law Center of Massachusetts, Maureen O'Sullivan, Kaplan, O'Sullivan and Friedman, Boston, MA, on brief for Nat. Immigration Project, American Immigration Lawyers Ass'n, and Texas Lawyers' Committee for Civ. Rights Under Law, amici curiae.
 Donald E. Keener, Atty., Office of Immigration Litigation, Civ. Div., Dept. of Justice, with whom Frank W. Hunger, Asst. Atty. Gen., Civ. Div., and Robert Kendall, Jr., Asst. Director, Washington, DC, were on brief for respondent.
 Before BREYER,* Chief Judge. TORRUELLA and SELYA, Circuit Judges.
 SELYA, Circuit Judge.
 
 
 1
 Ricardo Davila-Bardales asks us to review a decision of the Board of Immigration Appeals (BIA) in which the BIA affirmed an Immigration Judge's (IJ's) deportation order. The parties agree that the BIA's decision rests upon the IJ's finding that in late July of 1989 Davila-Bardales, then age 15, entered this country unlawfully, without inspection by an immigration officer. See 8 U.S.C. Sec. 1251(a)(1)(B) (1988 & Supp. IV 1992). The parties also agree that rules of the Immigration and Naturalization Service (INS) require "clear, unequivocal and convincing" evidentiary support for such a finding. 8 C.F.R. Sec. 242.14(a) (1993). They disagree about whether the INS, under its own rules and practices, could properly consider the evidence that showed unlawful entry in this case--evidence that consists primarily of Davila-Bardales's own statements and admissions.
 
 
 2
 The proof before the IJ featured petitioner's answers to questions that the IJ posed directly to petitioner (and several other individuals then before the judge) at the immigration hearing. These questions were all based on information in the Order to Show Cause (the OSC), a form indicating that Davila-Bardales was deportable.[1] The IJ asked the petitioner whether he was a "native and citizen of Peru," whether he "entered the United States near Laredo, Texas, on or about July 27, 1989," and whether he did so "through the river, through the fence, or conceal[ing] [him]self in some way without presenting [him]self to an Immigration Officer" for inspection. Davila-Bardales answered all these questions affirmatively.
 
 
 3
 The problem with this evidence is that Davila-Bardales, then under the age of 16, was not represented by counsel, nor was a guardian, relative, or friend present to advise him at the hearing. An INS regulation says that an IJ
 
 
 4
 shall not accept an admission of deportability from an unrepresented respondent who is ... under age 16 and is not accompanied by a guardian, relative or friend....
 
 
 5
 8 C.F.R. Sec. 242.16(b). And, as the INS concedes, this regulation removes the sting from these particular admissions.
 
 
 6
 A second set of evidentiary items contained in the record of the immigration hearing consists of the petitioner's answers to further questions that the IJ asked after he (the judge) realized that petitioner's age and lack of representation created a potential legal problem. At that point, the IJ showed Davila-Bardales a form, called a form I-213,[2] which is apparently a record of an officer's interview of Davila-Bardales, made soon after the Border Patrol apprehended him near Laredo on the evening of his alleged entry. After handing Davila-Bardales a copy of the form, the IJ pointed out that it said that Davila-Bardales was "a native and citizen of Peru," who "last entered the United States on July 27, 1989, near Laredo," and was "not inspected at that time." In response, Davila-Bardales said that "everything is correct."
 
 
 7
 We are not certain whether the INS means to rely upon this statement ("everything is correct") as itself showing deportability. In any event, the INS cannot do so due to the very same regulation that prevents it from relying on petitioner's responses to the OSC. Courts should not exalt form over substance without compelling reason, particularly when important rights are at stake. So it is here: we perceive no functional difference between asking petitioner whether the allegations in the OSC are true and asking him whether identical allegations in the form I-213 are true; and, moreover, we perceive no compelling reason for making an artificial distinction. Hence, petitioner's statement, considered as substantive evidence, would seem "an admission of deportability" made to the IJ by an "unrepresented respondent ... under age 16" who was "not accompanied by a guardian, relative, or friend," 8 C.F.R. Sec. 242.16(b), and, thus, not admissible as evidence at the hearing. Simply asking Davila-Bardales whether the same allegations are accurate, but reading them from a different piece of paper, does not cure the basic legal defect that mars the initial questioning.
 
 
 8
 Little daunted, the INS points to a third kind of evidence admitted at the hearing: the I-213 form itself. That form purports to memorialize an interview between Davila-Bardales and a Border Patrol officer. According to petitioner, this interview took place sometime after midnight at the "frontier" on the day he entered this country, before an official who "spoke little Spanish," and who (petitioner says) "hit" him "in the face."
 
 
 9
 We agree with the INS that the regulation we have quoted does not explicitly apply to this evidence. After all, the regulation, in context, seems to refer to the immigration hearing and the IJ's acceptance of an "admission" of deportability at that hearing. It says nothing about admissions made at other times and under other circumstances. See 8 C.F.R. Sec. 242.16(b).[3]
 
 
 10
 Nonetheless, the BIA, in its case law, has expressed considerable skepticism about the admissibility of similar statements made to Border Patrol officers by persons who are both unrepresented and under the age of sixteen. By way of illustration, it has said the following about such "statements made to an arresting officer during a custodial interrogation":
 
 
 11
 On its face, 8 C.F.R. Sec. 242.16(b) does not bar statements made during custodial interrogation. However, where the Service at the deportation hearing seeks to meet their burden of proof by introducing an admission of deportability made by an unaccompanied minor under 16 during his custodial interrogation, to allow admission of these statements circumvents the underlying intent of the above-quoted regulation. If, pursuant to 8 C.F.R. Sec. 242.16(b), an admission of deportability by an unrepresented minor made with all the procedural protections that exist in a formal hearing before [an immigration judge] lacks sufficient trustworthiness to be admissible, then statements made to an arresting officer during a custodial interrogation are at least of comparable untrustworthiness. Moreover, the regulation recognizes that an unaccompanied minor under 16 lacks sufficient maturity to appreciate the significance of an interrogation by a Service official and lacks the capacity to evaluate the foreseeable consequences of any responses provided, and this recognition should be applicable even during the initial stages of the Service's investigative process.
 
 
 12
 While we acknowledge that the regulations do not specifically require that a minor be accompanied by a "guardian, relative or friend" during a custodial interview, we do find that any admissions or confessions allegedly made by an unaccompanied minor under 16 during his interview will be treated as inherently suspect. This does not mean that in a proper case a minor's own admissions are not binding upon him. If a minor is of sufficient age and discretion to make him a competent witness, then he is competent to tell the truth against himself in court, and also competent to tell the truth by making admissions against himself outside of court.
 
 
 13
 In re Hernandez-Jimenez, No. Apv-vcv-qbg, slip op. at 6 (BIA Nov. 8, 1991) (emphasis supplied; citations omitted).
 
 
 14
 What is more, on the very day the BIA decided this case, it stated in the course of deciding a different case that, if the INS seeks to admit an I-213 form against a juvenile,
 
 
 15
 the circumstances surrounding the Service's preparation of the Form I-213 must be carefully examined to insure that alienage has been properly established.
 
 
 16
 The BIA added that,
 
 
 17
 where the Service seeks to establish alienage based on alleged admissions during the interrogation of an unaccompanied minor, the Service should present evidence from the arresting officers in order to demonstrate that the interview was conducted in a non-coercive environment and that the respondent was competent to respond to the questions posed to him.
 
 
 18
 In re Garcia, No. Aqp-vmu-cqg, slip op. at 3, 5 (BIA Aug. 17, 1993) (emphasis supplied).
 
 
 19
 We do not see how the BIA can reconcile these statements, made in other cases, with its position in this case. The matter at hand seems to present exactly the sort of circumstances that the BIA, in those other cases, addressed. It involves a midnight Border Patrol investigation, an underage suspect, an absence of legal representation, and an allegation of physical abuse. Yet, here, the INS presented no evidence from the arresting officers. Its records do not indicate that it carefully examined the circumstances surrounding the preparation of form I-213. Nor did the IJ, in the words the BIA used in Hernandez-Jimenez, treat the admissions made by Davila-Bardales (an unaccompanied minor) as "inherently suspect." And as a crowning blow, the BIA's opinion in this case, albeit stating in a conclusory fashion that petitioner understood the questions and answers at the hearing, does not discuss the integrity or reliability of the Border Patrol's interrogation.
 
 
 20
 Though the law does not require that all officials of a large agency "react similarly or interpret regulations identically" in every case, Puerto Rican Cement Co. v. EPA, 889 F.2d 292, 299 (1st Cir.1989), it does prohibit an agency from adopting significantly inconsistent policies that result in the creation of "conflicting lines of precedent governing the identical situation." Shaw's Supermarkets, Inc. v. NLRB, 884 F.2d 34, 37 (1st Cir.1989) (citation omitted). The purpose of this doctrine, as we have explained before, is "to prevent the agency itself from significantly changing [its] policies without conscious awareness of, and consideration of the need for, change." Puerto Rican Cement Co., 889 F.2d at 299.
 
 
 21
 This is not to say that an agency, once it has announced a precedent, must forever hew to it. Experience is often the best teacher, and agencies retain a substantial measure of freedom to refine, reformulate, and even reverse their precedents in the light of new insights and changed circumstances. See Rust v. Sullivan, 500 U.S. 173, 186-87, 111 S.Ct. 1759, 1768-69, 114 L.Ed.2d 233 (1991); Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co., 463 U.S. 29, 42, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). However, the law demands a certain orderliness. If an administrative agency decides to depart significantly from its own precedent, it must confront the issue squarely and explain why the departure is reasonable. See Congreso de Uniones Industriales de Puerto Rico v. NLRB, 966 F.2d 36, 39 (1st Cir.1992); Shaw's Supermarkets, 884 F.2d at 41.
 
 
 22
 The question of how the BIA will treat border patrol interrogation and any consequent admissions made by underage, unrepresented persons is important. In adjudicating Davila-Bardales's status, the BIA appears to have blazed a new trail that veers significantly from its own prior precedent. This zigzag course is not open to an agency when, as now, the agency has failed to explain why it is changing direction (or even to acknowledge in the later decision that it is detouring from a beaten path). See Shaw's Supermarkets, 884 F.2d at 36. In light of the unavowed, unexplained deviation, we shall remand this case to the BIA so that it may focus upon the matter and either adhere to its position in Hernandez-Jimenez and Garcia, or relate the reasons that make an alteration in that position appropriate.
 
 
 23
 We mention a few other points. For one thing, Hernandez-Jimenez and Garcia apparently are unpublished decisions and, thus, not formally in the category of "selected decisions designated by the Board," so they do not constitute "precedent" in the technical sense. See 8 C.F.R. Sec. 3.1(g) (1993); see also Leal-Rodriguez v. INS, 990 F.2d 939, 946 (7th Cir.1993). However, the INS has not mentioned that point in this appeal, nor does it argue that it may adopt inconsistent positions in its unpublished decisions; instead, it spends five pages of its brief attempting (in our view, with a complete and utter lack of success) to distinguish Hernandez-Jimenez and Garcia on the facts. Because the INS has chosen not to rely on this argument, we will not adopt it as a basis for sustaining the BIA's decision. See, e.g., Sandstrom v. Chemlawn Corp., 904 F.2d 83, 86 (1st Cir.1990) (holding that arguments not raised in the briefs are waived).
 
 
 24
 We note, moreover, that even if Hernandez-Jimenez and Garcia are not "precedent" in the technical sense, the prospect of a government agency treating virtually identical legal issues differently in different cases, without any semblance of a plausible explanation, raises precisely the kinds of concerns about arbitrary agency action that the consistency doctrine addresses (at least where the earlier decisions were not summary in nature, but, rather, contained fully reasoned explications of why a certain view of the law is correct). Put bluntly, we see no earthly reason why the mere fact of nonpublication should permit an agency to take a view of the law in one case that is flatly contrary to the view it set out in earlier (yet contemporary) cases, without explaining why it is doing so.[4] Hence, we do not believe that the BIA, in the circumstances at hand, can take refuge behind the determination not to publish Hernandez-Jimenez and Garcia.
 
 
 25
 Finally, the INS argues, for the first time on this appeal, that further proceedings are pointless because the petitioner has admitted his unlawful entry once again in an asylum petition and other related materials. We are uncertain, however, about the circumstances surrounding the preparation of these materials; we are also uncertain as to the extent to which the materials are admissible. See, e.g., 8 C.F.R. Sec. 242.17(e) (stating that an asylum application "shall not be held to constitute a concession of alienage or deportability in any case in which the respondent does not admit his alienage or deportability"). Consequently, we think that the course of both fairness and prudence is to leave this aspect of the matter open. Cf. Unemployment Comp. Comm'n v. Aragon, 329 U.S. 143, 155, 67 S.Ct. 245, 251, 91 L.Ed. 136 (1946) ("A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the [agency] of an opportunity to consider the matter, make its ruling, and state the reasons for its action."); Sullivan v. CIA, 992 F.2d 1249, 1256 (1st Cir.1993) (refusing to consider newly emergent ground for possible relief from agency action not considered below). The INS remains free to raise it, or to present additional evidence relevant to Davila-Bardales's deportability, on remand.
 
 
 26
 We need go no further. For the reasons set forth herein, we grant the petition for review, vacate the BIA's decision, and remand the case for further proceedings consistent with this opinion.
 
 So ordered.APPENDIX A
 
 27
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLEAPPENDIX B
 
 
 28
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 
 *
 Chief Judge Stephen Breyer heard oral argument in this matter and participated in the drafting of the opinion, but did not participate in issuance of the panel's opinion. The remaining two panelists therefore issue this opinion pursuant to 28 U.S.C. Sec. 46(d)
 
 
 [1]
 The OSC is reproduced in Appendix A hereto
 
 
 [2]
 This form is reproduced in Appendix B hereto
 
 
 [3]
 The regulation provides in pertinent part:
 The special inquiry officer shall require the respondent to plead to the order to show cause by stating whether he admits or denies the factual allegations and his deportability under the charges contained therein. If the respondent admits the factual allegations and admits his deportability under the charges and the special inquiry officer is satisfied that no issues of law or fact remain, the special inquiry officer may determine that the deportability as charged has been established by the admissions of the respondent. The special inquiry officer shall not accept an admission of deportability from an unrepresented respondent who is incompetent or under age 16 and is not accompanied by a guardian, relative, or friend.... When, pursuant to this paragraph, the special inquiry officer may not accept an admission of deportability, he shall direct a hearing on the issues.
 
 
 [8]
 C.F.R. Sec. 242.16(b)
 
 
 [4]
 In this vein, we note that the Leal-Rodriguez court, while stating that it would "not bind the BIA with a single non-precedential, unpublished decision," also observed that the unpublished decision there at issue was not, in fact, inconsistent with the BIA's position in the case before it, and that, therefore, the unpublished ruling "would not help" petitioner even if it had precedential value. Leal-Rodriguez, 990 F.2d at 946 & n. 9. That is not the situation here