47 F.3d 1156
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
 John R. HOLLAND, Plaintiff, Appellant,
v.
HARTFORD COMPUTER EXCHANGE, INC., and Ronlad Talbot,
Defendants, Appellees.
 No. 94-1842.
 United States Court of Appeals,
First Circuit.
 Feb. 7, 1995.
 
 Appeal from the United States District Court for the District of Massachusetts [Hon. Rya W. Zobel, U.S. District Judge ]
 Robert P. Sherman with whom Leonard G. Learner and David R. DeVeau were on brief for appellant.
 Scott A. Faust with whom Gregory C. Keating was on brief for appellees.
 D.Mass.
 AFFIRMED.
 Before TORRUELLA, Chief Judge, COFFIN, Senior Circuit Judge, and STAHL, Circuit Judge.
 COFFIN, Senior Circuit Judge.
 
 
 1
 Plaintiff John Holland asserts that the district court erred in granting summary judgment for defendants on his claim of constructive discharge and on various other causes of action stemming from his departure from his job as a computer salesman for Hartford Computer Exchange (HCE). Our review of the record and caselaw persuades us that, based on the evidence offered, no reasonable jury could find that Holland was discharged. Because this determination is fatal to most of his claims, and the remaining allegation of breach of contract also fails as a matter of law, we affirm the district court's judgment in its entirety.
 
 
 2
 A district court's grant of summary judgment is reviewed de novo. Bourque v. FDIC, No. 94-1568, slip op. at 7 (1st Cir. Dec. 28, 1994). We examine the evidence in the light most favorable to the nonmovant, and must affirm if the parties' proof reveals " 'that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " Id. (citation omitted).
 
 
 3
 An issue is only "genuine" if there is sufficient evidence to permit a reasonable jury to resolve the point in the nonmoving party's favor ... while a fact is only "material" if it has " 'the potential to affect the outcome of the suit under the applicable law.' "
 
 
 4
 Id. at 7-8 (citations omitted).
 
 
 5
 The central question in this appeal is whether Holland is entitled to jury consideration of his constructive discharge claim. The district court's negative answer had two separate prongs. First, it determined that, on the facts presented, no reasonable jury could conclude other than that Holland voluntarily left the defendants' employ. Second, it held that the facts underlying the allegation of constructive discharge are insufficient as a matter of law to support such a claim. In our view, it is unnecessary to dwell on Holland's intent because, as the district court found and as we shall explain below, the undisputed facts fall far short of establishing a termination. Cf. Vega v. Kodak Caribbean, Ltd., 3 F.3d 476, 481 (1st Cir. 1993) ("An employee's perceptions cannot govern a claim of constructive discharge if, and to the extent that, the perceptions were unreasonable.").[1]
 
 
 6
 A constructive discharge occurs when an employer "deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation," Pena v. Brattleboro Retreat, 702 F.2d 322, 325-26 (2d Cir. 1983) (citation omitted), cited in Radvilas v. Stop & Shop, Inc., 18 Mass. App. Ct. 431, 439 n.14, 466 N.E.2d 832, 838 n.14 (1984). See also Vega, 3 F.3d at 480 (to establish constructive discharge plaintiff must show that his work was "so arduous or unappealing, or working conditions so intolerable, that a reasonable person would feel compelled to forsake his job rather than to submit to looming indignities"); Alicea Rosado v. Garcia Santiago, 562 F.2d 114, 119 (1st Cir. 1977).[2] A change for the worse in the quality of working conditions is not itself enough to satisfy the standard; a constructive discharge involves a "drastic reduction" in the circumstances of one's employment. Alicea Rosado, 562 F.2d at 120.
 
 
 7
 Holland's claim of constructive discharge rests upon the fact that his commission percentage was reduced from 40 percent to 30 percent in July 1993.[3] Holland therefore needs to show that withdrawal of ten percent of his commission made his employment at HCE "intolerable," effectively compelling him to leave. Although Holland insists that a 25 percent paycut is so substantial that he must be entitled to a jury finding on its significance, we are obliged to view that reduction within the full factual context in evaluating whether any reasonable jury could find a constructive discharge. We therefore summarize the relevant background.
 
 
 8
 In early 1992, when three key HCE employees left the company to form their own business, Holland asked for a better commission structure as a inducement for him to stay. HCE's president, Ronald Talbot, agreed to increase Holland's commissions to a flat 40 percent on gross profits. Under the tiered structure previously in effect, Holland had earned a 30 percent commission on profits up to $75,000, 35 percent on profits between $75,000 and $150,000, and 40 percent on gross profits over $150,000.
 
 
 9
 Two months after the change in compensation, Holland wrote to Talbot expressing concern about the company's continuing viability, advising him that "[u]nless you intend to rebuild HCE, we need to plan a graceful transition." Holland stated that he planned to begin seeking other opportunities, and "hope[d] that within the next 2-4 months I can find another position." During the following fourteen months, Holland and Talbot together explored ways of keeping Holland at HCE, including his becoming a part owner of the business. None of these approaches came to fruition, and in May 1993 Holland actively began pursuing other jobs, including one with a sales training firm in San Diego. Holland took off a week in June to attend a course at the San Diego company, Solution Selling, and another week in July to attend an associates meeting there.
 
 
 10
 In mid-July, several events occurred. On July 15, Talbot wrote a letter to Holland noting that Holland had said he was leaving HCE, and detailing procedures for "a workable transition." Holland, who denies that he ever told Talbot he was leaving, responded with a memo on July 19:
 
 
 11
 As you know, all discussions between us regarding a migration from HCE to Solution Selling have been contingent upon us reaching a mutually satisfactory severance agreement. If we are unable to reach such an agreement, I intend to remain with HCE.
 
 
 12
 On another note, this will confirm that you have authorized me to attend the Solution Selling Associates meeting to be held in San Diego the week of July 26. Of course, I shall be available by phone that week and will be checking my messages on a daily basis.
 
 
 13
 Finally, thank you for coming to Boston today to meet with me. Per our discussion, I look forward to receiving a revised severance package proposal from you.
 
 
 14
 In a telephone conversation on July 22, and in a memo thereafter, Talbot informed Holland that his commission rate would now be calculated at 30 percent. The memo stated that "[t]his plan will be reviewed again on/about September 1, 1993."
 
 
 15
 On September 3, Holland faxed a letter to Talbot announcing his departure from HCE. Holland stated that he was "not willingly or voluntarily terminating my employment with HCE," but was being forced out by Talbot's "unilaterally changing the terms of our agreement and thereby making it economically impossible for me to remain with the company."
 
 
 16
 We believe that no reasonable juror could conclude that this sequence of events adds up to a constructive discharge. Holland's commission had been increased to 40 percent as an incentive for him to stay with HCE, and it was not reduced until after Holland aggressively had been pursuing other jobs and his departure seemed imminent. The fact that Holland claimed that he would not leave unless he got an adequate severance package in no way diminishes the inference unequivocally drawn from his actions-that he was on his way out the door. The rationale for his commission increase therefore no longer existed.
 
 
 17
 In addition, while a flat 30 percent rate was a lower level of compensation than provided even in the earlier tiered structure, it was a percentage from within that three-level scheme. And, because he already had earned 40 percent on all profits through the first six months of 1993, the flat 30 percent rate beginning in July could not have meant much of a change in his average, annual commission rate from the percentage he had accepted as satisfactory before January 1992. Certainly, any difference cannot be termed so intolerable as to trigger a forced termination. This is particularly so because the 30 percent level was given limited duration. Talbot's memo stated that Holland's compensation plan would be reviewed again on about September 1.[4]
 
 
 18
 In short, the undisputed facts inescapably show that Holland was dissatisfied with his earning potential at HCE and was looking aggressively for other opportunities. In those circumstances, Talbot's decision to withdraw a premium compensation rate explicitly offered as an incentive for continuity can hardly be characterized as a termination. The district court therefore correctly held that the facts underlying the allegation of constructive discharge are insufficient as a matter of law. Cf. Nunez-Soto v. Alvarado, 918 F.2d 1029, 1031 (1st Cir. 1990) (despite "significantly adverse" employment action, including demotion from supervisory position, the facts do not show circumstances "that would likely make her quit"); Zabielski v. Montgomery Ward & Co., 919 F.2d 1276, 1281 (7th Cir. 1990) (constructive discharge claim viable where plaintiff's salary cut from $26,000 to $9,600 and plaintiff demoted out of management).
 
 
 19
 Holland's claim that Talbot committed a breach of contract when he withdrew the 40 percent rate is equally insupportable. Holland asserts that, when Talbot offered the higher compensation "on a going forward basis," he was committing to such a rate for however long Holland remained employed at HCE. This assertion, however, is based solely on Holland's subjective expectation. As noted, Holland was an at will employee. The combined effect of that status, past experience-Talbot previously had made a unilateral reduction in the commission schedule-and the context of the raise-to induce Holland to stay-make unreasonable any inference that a binding contract for an indefinite term was formed. Holland's effort to generate a genuine factual dispute concerning this issue therefore fails.
 
 
 20
 As Holland concedes in his brief, the legal inadequacy of his constructive discharge claim extinguishes his remaining causes of action. The district court's grant of summary judgment to defendants is therefore AFFIRMED.
 
 
 
 [1]
 As a practical matter, of course, there is no difference between the district court's two holdings. The conclusion that the allegations failed as a matter of law to establish a termination leads inexorably to a finding that Holland left HCE voluntarily
 
 
 [2]
 Holland asserts in his brief that Massachusetts would apply a "more liberal" standard in evaluating his claim of constructive discharge, but the cases he cites fail to support such a contention because they involve employees with written employment contracts. See Miller v. Winshall, 9 Mass. App. 312, 318, 400 N.E.2d 1306, 1310 (1980); Steranko v. Inforex, Inc., 5 Mass. App. 253, 263, 362 N.E.2d 222, 230 (1977) ("A material change in an employee's duties or a significant reduction in rank may constitute a breach of contract entitling the employee to damages."). Holland concededly was an at-will employee, which logically implicates different concerns. Cf. Henderson v. L.G. Balfour Co., 852 F.2d 818, 822 n.1 (5th Cir. 1988) (applying Massachusetts law)
 
 
 [3]
 He alleged, in addition, a "systematic pattern of harassment" that consisted entirely of questioning on two occasions in the summer of 1993 by HCE's president about expenses for which Holland sought reimbursement. One involved a new one-year subscription to the Wall Street Journal and the other concerned the large number of personal long distance phone calls on Holland's July 1993 telephone bill for HCE, including 15 to a prospective new employer. At oral argument, Holland's counsel acknowledged that these incidents add nothing to the constructive discharge claim, and simply were meant to be corroborative
 
 
 [4]
 In addition, by August 1993, HCE had an experienced broker who could help Holland generate sales. This was not the case when his commission was increased to 40 percent in early 1992 after, in his words, HCE "lost one of the top brokers in the business." See App. at 161 (March 1992 letter to Talbot)