USCA1 Opinion

 

 February 27, 1995 [NOT FOR PUBLICATION] [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 93-2124 IN RE: RICARDO DAVILA-BARDALES. _________________________ RICARDO DAVILA-BARDALES, Movant, v. IMMIGRATION AND NATURALIZATION SERVICE, Respondent. _________________________ ON MOTION FOR AN AWARD OF ATTORNEYS' FEES _________________________ Before Torruella, Chief Judge, ___________ Selya and Cyr, Circuit Judges. ______________ _________________________ Victoria Lewis and Greater Boston Legal Services on _______________ _________________________________ memorandum for movant. Frank W. Hunger, Assistant Attorney General, Civil Division, _______________ Department of Justice, Priscilla McNeill Jones and Donald E. ________________________ __________ Keener, Attorneys, Office of Immigration Litigation, Civil ______ Division, on memorandum for respondent. _________________________ _________________________  SELYA, Circuit Judge. Ricardo Davila-Bardales seeks SELYA, Circuit Judge. _____________ attorneys' fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. 2412 (1988). He bases his motion on appellate proceedings in which he successfully persuaded this court to vacate an order of deportation and remand for further consideration. See Davila-Bardales v. INS, 27 F.3d 1 (1st Cir. ___ _______________ ___ 1994). Because we find that the government's position in this court was substantially justified, we deny the motion. I I We offer a succinct summary of prior proceedings, referring the reader who hungers for a meatier account to our earlier opinion. In 1989, the Immigration and Naturalization Service (INS) issued an order to show cause why Davila-Bardales should not be deported on the ground that he was a Peruvian national who had unlawfully entered the United States without inspection. Applicable INS regulations prohibit an immigration judge (IJ) from accepting an admission of deportability from an unrepresented party under the age of 16 unless the minor is accompanied by an adult guardian, relative, or friend. See 8 ___ C.F.R. 242.16(b) (1994). Nevertheless, at the show-cause hearing the IJ asked petitioner, then age 15, whether the allegations in the rule to show cause were true. The petitioner answered affirmatively. The IJ also reviewed Form I-213, a document constituting a record of an INS officer's interview with 3 petitioner shortly after petitioner's alleged entry. The form attributed to petitioner admissions similar to those he made in the later show-cause hearing. The IJ asked petitioner if the statements reported in the form were correct, and petitioner acknowledged that they were. His comments regarding the form, and Form I-213 itself, arguably escaped the grasp of the aforementioned regulation, 8 C.F.R. 242.16(b), because the statements were not made as part of the hearing, but, rather, in custodial interrogation outside the IJ's presence. The IJ found petitioner deportable, and the Board of Immigration Appeals (BIA) affirmed despite an apparent conflict with two unpublished BIA decisions. See In re Garcia, NO. A70- ___ _____________ 006-067, slip op. (BIA Aug. 17, 1993); In re Hernandez-Jimenez, _______________________ No. A29-988-097, slip op. (BIA Nov. 8, 1991). Although these decisions lacked precedential force, see 8 C.F.R. 3.1(g) ___ (1994), they suggested that the evidence related to the form should have been excluded. See Davila-Bardales, 27 F.3d at 4. ___ _______________ Petitioner sought judicial review. We vacated the order of deportation because the BIA had not adequately explained the apparent inconsistency between its unpublished decisions in Garcia and Hernandez-Jimenez, on the one hand, and its decision ______ _________________ in petitioner's case, on the other hand. See id. at 5-6. ___ ___ Withal, we left open the possibility that the BIA might develop a consistent and principled rule which would sometimes allow the introduction of an unaccompanied minor's statements made during custodial interrogation. See id. Shortly thereafter, petitioner ___ ___ 4 filed the instant motion. II II The EAJA permits a prevailing party to recover reasonable counsel fees and expenses incurred in civil litigation with the government, but only if the government has taken a position that is not "substantially justified" and no special circumstance renders a fee award unjust. See De Allende v. ___ ___________ Baker, 891 F.2d 7, 8 (1st Cir. 1989); Sierra Club v. Secretary of _____ ___________ ____________ the Army, 820 F.2d 513, 516-17 (1st Cir. 1987). ________ The threshold requirement for access to EAJA benefits is that a party prevail in his litigation with the federal sovereign. It is unclear whether petitioner satisfies this benchmark: it is problematic whether one is a "prevailing party" within the meaning of the EAJA merely because he secures a remand for further agency action. Several cases have held or implied that prevailing party status is only conferred upon a party who wins at least part of the ultimate relief sought. See, e.g., ___ ____ Hanrahan v. Hampton, 446 U.S. 754, 758-59 (1980) (rejecting ________ _______ prevailing party status under 42 U.S.C. 1988 for one who merely obtains vacation of a directed verdict on appeal); Escobar Ruiz ____________ v. INS, 787 F.2d 1294, 1297 (9th Cir. 1986), aff'd, 838 F.2d ___ _____ 1020, 1029 (9th Cir. 1988) (en banc); see also Texas State ___ ____ ____________ Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 791-92 ______________ _________________________ (1989). Here, petitioner has not yet obtained any ultimate ________ relief as the issue of his deportability remains unsettled. We are hesitant to decide the matter on this basis, 5 however, as the status of these cases has been drawn into some question by the Court's recent opinion in Shalala v. Schaefer, _______ ________ 113 S. Ct. 2625, 2631-32 (1993), which held that procurement of a "sentence four" remand in the context of social security litigation qualifies the putative benefit-recipient as a prevailing party. And, moreover, the record reveals an independent basis on which the motion can be decided. Because we find the government's position in the present case was substantially justified, see infra, we skirt the challenging ___ _____ legal question of whether petitioner can at this stage be considered a prevailing party. The question of what constitutes "substantial justification" has proven to be a vexing one, best addressed on a case by case basis. In Pierce v. Underwood, 487 U.S. 552 (1988), ______ _________ the Court noted that substantial justification does not necessarily mean justified to a high degree, but, rather, requires only that the government's stance must have been "justified to a degree that could satisfy a reasonable person." Id. at 565. Accordingly, the test of substantial justification ___ turns on whether the government's position was "reasonable in both law and fact." United States v. Yoffe, 775 F.2d 447, 449 ______________ _____ (1st Cir. 1985). What is more, an unfavorable outcome in the underlying litigation, by itself, does not create a presumption that the government's position was not substantially justified. See De Allende, 891 F.2d at 12; Sierra Club, 820 F.2d at 517. ___ __________ ___________ Frequently, the issue of substantial justification is 6 bifurcated so that an inquiring court may consider, first, the reasonableness of the government's agency position, and, second, the reasonableness of its litigation position. See, e.g., United ___ ____ ______ States v. One Parcel of Real Property, 960 F.2d 200, 209 (1st ______ ____________________________ Cir. 1992). We eschew such a bifurcated approach in the instant case. In the first place, the Supreme Court has held that the EAJA does not apply to civil deportation proceedings before the INS, see Ardestani v. INS, 112 S. Ct. 515, 521 (1991), and ___ _________ ___ petitioner, mindful of this impediment, has not sought fees for proceedings prior to those conducted in this court. Thus our analysis of substantial justification must focus primarily on the INS's litigation position in this venue as opposed to its conduct in bringing the deportation proceedings and in considering the petitioner's admissions during custodial interrogation. Second, and relatedly, we have held that adjudicators, even though part of the Executive Branch, are exempt from the provisions of the EAJA. See In re Perry, 882 F.2d 534, 539-41 (1st Cir. 1989). ___ ____________ Consequently, our analysis of substantial justification must look primarily from the perspective of the INS rather than from the perspective of the BIA. III III Applying the standard we have described, we find that the government has met its burden of showing that its position was substantially justified. The law concerning the status of a minor's admissions during interrogation at the border was tenebrous before our decision in the instant case, and remains 7 somewhat murky. There was no precedent in this court regarding admissions of deportability by minors, and the only BIA discussions of the issue were in unpublished opinions, which have no precedential value. This lack of clarity in the law strongly suggests substantial justification for the government's position. See De Allende, 891 F.2d at 12-13; Mattson v. Bowen, 824 F.2d ___ ___________ _______ _____ 655, 657 (8th Cir. 1987); Martinez v. Secretary of HHS, 815 F.2d ________ ________________ 1381, 1383 (10th Cir. 1987). Put another way, since the petitioner's statements seemingly fell outside the reach of the only applicable regulation, there was a significant lack of guidance in the law, and the government was substantially justified in adhering to its position that the IJ and the BIA properly relied upon the disputed statements. This was especially true in the situation at hand. After all, the INS had good reason to believe that the circumstances surrounding the petitioner's statements supported the veracity and reliablilty of the admissions; the transcript of the hearings reveals that petitioner was able to understand and articulate answers to the relatively simple factual questions he was asked. Although the BIA displayed regrettable inconsistency in its decisions, the INS could realistically hope that petitioner's statements would prove admissible in the end, even if the statements became subject to a consistent rule governing unaccompanied admissions made during custodial interrogation. We think, too, that the posture of the case argues cogently in favor of a finding of substantial justification. The 8 INS prevailed initially, both before the IJ and before the BIA. It did not seek judicial review, but came to this court as a respondent. While we are not prepared to say that the government, qua respondent, may never be held responsible for ___ fees under the EAJA if the petitioner prevails, cf. Sierra Club, ___ ___________ 820 F.2d at 519-20 (affirming EAJA award of reasonable attorneys' fees in non-administrative adjudication, despite "evanescent" government victory in the district court, because the government's legal position was so obviously contrary to existing law), we are very reluctant to criticize the INS for opposing the petition for review in this court, given that the BIA already had decided the case in its favor. Thus, we conclude that the INS's position, though ultimately unsuccessful, was reasonable under the circumstances. IV IV We need go no further. Because the government's position was substantially justified within the meaning of the EAJA, petitioner's motion for attorneys' fees is Denied. ______ 9