NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0213n.06

No. 14-3222

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Mar 16, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JOHNNY CHANDRADEO MAHARAJ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | OF A FINAL ORDER OF THE |
| ERIC HOLDER, Attorney General, | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| Respondent. | ) | |
| | ) | |
| | ) | |

Before: COLE, Chief Judge; KETHLEDGE, Circuit Judge; OLIVER, District Judge.[*]

KETHLEDGE, Circuit Judge. Johnny Maharaj, a citizen of Trinidad and Tobago, petitions for review of a final order of removal issued by the Board of Immigration Appeals. He challenges both the Board's refusal to grant a "hardship waiver" and the Board's determination that he was not eligible for cancellation of removal. We deny the petition for review.

I.

In 1996, while still in Trinidad, Maharaj married his first wife, Sunita; they had a daughter there two years later. In 1999, the couple entered the United States on a six-month tourist visa, but divorced almost immediately after that visa expired. A year or so later, they both married American citizens, giving Maharaj and Sunita the status of conditional permanent residents. *See* 8 U.S.C. § 1186a(a)(1).

---

[*] The Honorable Solomon Oliver, Jr., Chief United States District Judge for the Northern District of Ohio, sitting by designation.

Maharaj and his new American wife, Genevieve, had three children during their marriage—though none with each other. Maharaj fathered a child with Sunita; Genevieve gave birth to two children fathered by another man, Richard Trusnick. Genevieve conceived her first child with Trusnick just a few months after she married Maharaj. A.R. 75. Maharaj testified that he and Genevieve lived together from March 2001 until May 2002, and then again from October 2003 until December 2004. But Trusnick was unaware of this purported living arrangement: he testified that Genevieve lived with him for nearly all of that time.

While Maharaj was married to Genevieve, he purchased a house with Sunita. The mortgage paperwork was signed by everyone concerned—Maharaj, Genevieve, Sunita, and her husband—but the words "solely to release dower" appeared under the signatures of Sunita's husband and Genevieve. A.R. 398. Maharaj opened a joint bank account with Genevieve, but there is no evidence that she ever used the account. The couple also had joint credit cards, but the statements do not show who used the cards, and Maharaj testified that he shredded the cards after Genevieve used them. A.R. 76.

Sunita became an American citizen in 2007; that same year, Maharaj filed for divorce from Genevieve. In September 2008, Citizenship and Immigration Services determined that Maharaj and Genevieve had not married in good faith. Hence the Service terminated Maharaj's status as a permanent resident. *See* 8 U.S.C. § 1186a(c)(3)(C). Two months later, the Department of Homeland Security filed a Notice to Appear charging that Maharaj was removable from the United States. A.R. 649-54; *see* 8 U.S.C. § 1227(a)(1)(D)(i).

In February 2009, Maharaj and Genevieve finalized their divorce. Maharaj then filed a petition for a hardship waiver, which would allow him to remain in the United States if he could

show that he had married Genevieve in good faith. *See* 8 U.S.C. § 1186a(c)(4). The Service denied that petition in November 2009.

Between 2009 and 2012, the immigration judge conducted multiple hearings to determine whether to remove Maharaj. During those hearings, Maharaj argued that the Service should have granted his petition for a hardship waiver and that he was eligible for cancellation of removal pursuant to 8 U.S.C. § 1229b(a). The immigration judge rejected those arguments, and the Board of Immigration Appeals affirmed. This appeal followed.

II.

A.

Maharaj argues that the Board erred in denying him a hardship waiver. As an initial matter, the government disputes whether we have jurisdiction to address that argument. We typically have jurisdiction over a petition for review of a final order of removal. *See* 8 U.S.C. § 1252(a)(1). But we may not review whether the Board erred in its "assessment of the weight or credibility of the evidence" in denying a hardship waiver. *Johns v. Holder*, 678 F.3d 404, 406 (6th Cir. 2012). Although the government contends that Maharaj asks us to do just that, he actually asks us to answer two different questions: whether the Board applied the correct burden of proof in determining whether Maharaj married Genevieve in good faith, and whether substantial evidence supported the Board's finding that he did not do so. Those are both questions of law over which we have jurisdiction. *Id.* at 406, 407. So we will answer them.

First, Maharaj argues that the Board erred by applying a heightened burden of proof. We review de novo whether it did so. *Id*. at 406. Where, as here, the Board adopts the immigration judge's reasoning, we look through the Board's decision and review the immigration judge's decision directly. *Gilaj v. Gonazales*, 408 F.3d 275, 282-83 (6th Cir. 2005).

To obtain a hardship waiver, an alien must demonstrate by a preponderance of the evidence that he married an American citizen in good faith. *See* 8 U.S.C. § 1186a(c)(4)(B). The term "preponderance of the evidence," of course, means simply "the greater weight of the evidence." *See, e.g.*, *New York Life Ins. Co. v. Gamer*, 303 U.S. 161, 166 (1938). Here, the immigration judge held that Maharaj "failed to meet his burden of proof" because "the greater weight of the evidence" showed that he did not marry Genevieve in good faith. A.R. 80. Thus, the immigration judge applied the correct burden of proof.

Maharaj responds that the immigration judge must have implicitly held him to some higher burden, because the judge found that Maharaj did not marry in good faith even though he produced nearly all of the kinds of documents that a federal immigration regulation suggests he "may include" with his waiver application. 8 C.F.R. § 216.5(e)(2); *see also id.* § 216.4(a)(5). But that regulation nowhere states that a petitioner meets his burden simply by producing each kind of document specified therein. To the contrary, a petitioner meets his burden only if those documents actually show that he married in good faith. Here, the immigration judge found that Maharaj's documents did not show that he did so—for reasons that we lack jurisdiction to review. That the immigration judge made such a finding shows only that he disagreed with Maharaj about the weight to assign to those documents, not that the judge held Maharaj to a higher burden of proof. So this argument fails.

Second, Maharaj argues that substantial evidence does not support the immigration judge's finding that he did not marry Genevieve in good faith. We must uphold that finding unless the evidence compels a contrary conclusion. *Huang v. Mukasey*, 523 F.3d 640, 649 (6th Cir. 2008). Here, the evidence showed that Maharaj and Genevieve never shared finances, rarely lived together, and had multiple children with other people while nominally married to one

another. That evidence hardly compels the conclusion that Maharaj married Genevieve in good faith. So this argument fails as well.

B.

Maharaj also argues that the Board erred in holding that he was not eligible for cancellation of removal. We review that decision de novo. *Harchenko v. I.N.S.*, 379 F.3d 405, 409 (6th Cir. 2004). In certain circumstances, the Attorney General may cancel the removal of a permanent resident who is otherwise removable from the United States. 8 U.S.C. § 1229b(a). To be eligible for cancellation of removal under this provision, however, an alien must show, among other things, that he was "lawfully admitted for permanent residence" at the time he applied for cancellation of removal. *Id.* § 1229b(a)(1).

An alien who marries an American citizen is "lawfully admitted for permanent residence" on a "conditional basis." *Id.* § 1186a(a)(1). Within approximately two years of the marriage, the alien must file a petition to remove those conditions. *Id.* § 1186a(d)(2). In that petition, he must state, among other things, that he married his citizen-spouse in good faith. *Id.* § 1186a(d)(1)(A)(III). If the Service determines that he did not marry in good faith, then his permanent-resident status is "terminated . . . as of the date of the [Service's] determination [that the marriage was not in good faith]." *Id.* § 1186a(c)(3)(C).

Here, the Service determined on September 30, 2008 that Maharaj's marriage to Genevieve was not in good faith, thereby terminating his permanent-resident status "as of [that] date." *Id.* Maharaj applied for cancellation of removal two years later, in 2010, which means that he was no longer "lawfully admitted for permanent residence" when he did so. Thus, he was not eligible for cancellation of removal.

Maharaj responds that in 2010 he was still a permanent resident according to the "definitions" section of the immigration regulations. That section provides in relevant part:

> The term lawfully admitted for permanent residence means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed. *Such status terminates upon entry of a final administrative order of exclusion, deportation, removal or rescission.*

8 C.F.R. § 1001.1(p) (emphasis added). Relying on the second sentence of that regulation, Maharaj argues that he was still a permanent resident when he applied for cancellation of removal because no final administrative order of removal had yet been entered against him.

On its face, the regulation does lay down a general rule that a permanent resident loses his status only after the Board enters a final administrative order. But another regulation carves out an exception to that rule, specifically providing that a *conditional* permanent resident like Maharaj loses his status "as of the date of [the Service's] written decision [finding that his marriage to an American citizen was not in good faith]." 8 C.F.R. § 216.4(d). More importantly, the statute itself provides that a conditional permanent resident's status is terminated "as of the date of the [Service's] determination [that the marriage was not in good faith]." 8 U.S.C. § 1186a(c)(3)(C). Under that statutory rule—which we apply today—Maharaj lost his status on September 30, 2008, which means that he was not a permanent resident when he applied for cancellation of removal two years later. Thus, he was not eligible for cancellation of removal.

The petition for review is denied.