NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0268n.06

No. 18-3684

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

JOHN ISHAC,

      Petitioner,

v.

WILLIAM P. BARR, Attorney General,

      Respondent.

)
)
)
)
)
)
)
)
)
)
)

FILED
May 23, 2019
DEBORAH S. HUNT, Clerk

ON PETITION FOR REVIEW
FROM THE UNITED STATES
BOARD OF IMMIGRATION
APPEALS

Before: MERRITT and LARSEN, Circuit Judges.[*]

LARSEN, Circuit Judge. In 2006, an immigration judge (IJ) ordered John Ishac removed from the United States to Iraq. Ishac successfully petitioned to reopen his removal proceedings in 2017 to seek withholding of removal and protection under the Convention Against Torture (CAT). But in February 2018, the IJ denied Ishac's applications for relief after concluding that Ishac had not met his burden of showing that he would be persecuted or tortured in Iraq. Ishac appealed the IJ's decision and, claiming ineffective assistance of counsel, also moved the Board of Immigration Appeals (BIA) to remand the case for the IJ to consider additional evidence and to allow him to apply for cancellation of removal. The BIA dismissed Ishac's appeal and denied his motion to remand. Ishac now petitions this court for review of the BIA's decision. For the following reasons, we DENY in part and GRANT in part the petition for review.

---

[*] The third member of this panel, Judge Damon J. Keith, died on April 28, 2019. This order is entered by the quorum of the panel. 28 U.S.C. § 46(d).

I.

John Ishac was born in 1980 to a Lebanese mother and an Iraqi father staying in Greece as temporary refugees. When two months old, Ishac and his parents entered the United States as refugees. He became a lawful permanent resident in 1982. His parents both became naturalized United States citizens.

In October 2001, Ishac was convicted of attempting to carry a concealed weapon (a pistol), in violation of Mich. Comp. Laws (MCL) § 750.227. Two months later, he was convicted of operating a motor vehicle while intoxicated—his second such offense—in violation of MCL § 257.625(3). In June 2002, the Department of Homeland Security (DHS) issued Ishac a notice to appear before an IJ to answer the charge that he was removable, under 8 U.S.C. § 1227(a)(2)(C), as an alien convicted of a firearm offense. After Ishac picked up additional convictions in November 2002 for attempted possession of a controlled substance (ecstasy), in violation of MCL § 333.7403(2)(b)(ii), and for attempted fleeing (4th degree), in violation of MCL § 257.602a(2), DHS added an additional removal charge against him, under 8 U.S.C. § 1227(a)(2)(B)(i), as an alien convicted of a controlled substance offense. Ishac conceded removability via counsel and applied for cancellation of removal as a legal permanent resident under 8 U.S.C. § 1229b(a). The IJ determined that Ishac did not merit cancellation of removal, largely because Ishac had continued to use drugs and had violated his probation during the removal proceedings. In December 2006, the IJ ordered him removed to Iraq.

Over ten years later, in July 2017, Ishac, still in the United States, moved to reopen his removal proceeding based on changed conditions for Christians in Iraq. Ishac is a Chaldean Christian, and he argued that Christians in Iraq were being tortured and killed. The IJ granted

Ishac's motion to reopen his removal proceeding to determine whether Ishac qualified for relief from removal.

Ishac then applied for withholding of removal and CAT protection. In support of his application, Ishac submitted articles, affidavits, and country reports attesting to the dangerous conditions in Iraq. DHS submitted similar types of evidence, highlighting the improved conditions in Iraq following the significant military successes against ISIS. Ishac argued that he would more likely than not suffer persecution or torture if returned to Iraq based on his religion and his particular social group as an easily identifiable Americanized Iraqi. DHS responded that the Iraqi government was working to protect Christians and that Christian regions were beginning to be rebuilt and repopulated. DHS also argued that being an Americanized Iraqi was not a cognizable social group for withholding of removal purposes.

On February 6, 2018, the IJ denied Ishac's claims. The IJ first sustained DHS's objections to two of the three affidavits Ishac had submitted, deciding that the declarants did not qualify as expert witnesses on country conditions in contemporary Iraq. The IJ instead treated the two declarants only as percipient witnesses whose knowledge was helpful. After reviewing the documentary evidence, the parties' arguments, and the relevant legal standards, the IJ determined that Ishac was credible. The IJ then held that Americanized or westernized Iraqis do not qualify as a cognizable particular social group for purposes of withholding of removal and that Ishac had not met his burden of showing that it was more likely than not he would be persecuted by the Iraqi government or by forces the Iraqi government cannot or will not control. The IJ noted, in particular, that much of Ishac's evidence described conditions in Iraq before June 2017—before ISIS had suffered its most significant military defeats. Turning to the claim for CAT protection,

the IJ held that there was no record evidence that the Iraqi government would torture Ishac or that it would acquiesce in his torture.

Ishac, represented by new counsel, appealed to the BIA. Ishac also moved for a remand on the ground that his prior counsel had provided ineffective assistance by not submitting readily available country conditions evidence, forgetting to file a witness list, confusing the standards for asylum and withholding of removal, overlooking relevant precedent, and failing to reapply for cancellation of removal. Ishac also submitted additional country conditions evidence, including the State Department's 2017 Country Report on Human Rights Practices in Iraq and the State Department's 2017 International Religious Freedom Report.

The BIA dismissed Ishac's appeal, adopting and affirming the IJ's decision.[1] The BIA also denied Ishac's motion to remand. The BIA concluded that Ishac had not established that his prior counsel's conduct resulted in prejudice because any inadequate performance did not change the outcome of the proceedings. Regarding the failure to reapply for cancellation of removal, the BIA held that "the evidence does not establish [Ishac's] prima facie eligibility for cancellation of removal" and that not applying for the relief was "a permissible tactical decision." The BIA also held that the additional evidence Ishac submitted in support of his motion did not, by itself, warrant

---

[1] In doing so, the BIA affirmed the IJ's conclusion that Americanized or westernized Iraqis do not qualify as a cognizable particular social group for purposes of withholding of removal. Ishac has not petitioned for review of this conclusion.

a remand because some of it could have been submitted in the prior application,[2] some was in fact presented to the IJ,[3] and some was substantively cumulative of the evidence presented.

Ishac timely petitioned for review and moved for a stay of removal pending this court's disposition of his claims. The Attorney General opposed the stay and moved to dismiss the petition on the ground that 8 U.S.C. § 1252(a)(2)(C) barred our review of Ishac's claims. This court granted the stay of removal and denied the Attorney General's motion to dismiss after concluding that Ishac had raised colorable constitutional claims or questions of law not precluded by § 1252(a)(2)(C)'s jurisdictional bar. *Ishac v. Sessions*, No. 18-3684 (6th Cir. Aug. 24, 2018) (order).

## II.

### A. Jurisdiction

"Where the [BIA] adopts the IJ's decision and supplements that decision with its own comments . . . we review both the BIA's and the IJ's opinions." *Hachem v. Holder*, 656 F.3d 430, 434 (6th Cir. 2011). But here our jurisdiction to review Ishac's claims is limited. Pursuant to 8 U.S.C. § 1252(a)(2)(C), "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed" controlled substance or firearms offenses. Ishac conceded removability under both 8 U.S.C. § 1227(a)(2)(B)(i) (aliens convicted of controlled substance offenses) and under 8 U.S.C. § 1227(a)(2)(C) (aliens convicted of firearms offenses), and he does not dispute that § 1252(a)(2)(C)'s jurisdictional bar applies to him. This

---

[2] "A motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered . . . was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1); *see also In re Rajah*, 25 I. & N. Dec. 127, 138 (B.I.A. 2009) ("The requirements for a motion to remand are essentially the same as the requirements for a motion to reopen.").

[3] The BIA asserted that "[t]he declarations of Rebecca Heller, Mark Lattimore[sic], and Daniel Smith[] are duplicates of evidence before the Immigration Judge."

bar, however, does not "preclud[e] review of constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(D).

The jurisdictional bar constrains our capacity to review Ishac's claims because eligibility for both withholding of removal and CAT protection rest on *factual* assessments of the likelihood that an alien will face harm following removal from the United States. To make out a claim for withholding of removal, an alien must establish a clear probability that his "life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *see also Mapouya v. Gonzales*, 487 F.3d 396, 414 (6th Cir. 2007) (explaining that the "clear probability" standard requires "more than a 50 percent likelihood of persecution"). An alien seeking CAT protection must prove that "it is more likely than not that he or she would be tortured." 8 C.F.R. § 1208.16(c)(2). Ordinarily, we would review the agency's likelihood-of-harm determination under the substantial evidence standard. *See Kamar v. Sessions*, 875 F.3d 811, 817–21 (6th Cir. 2017). But § 1252(a)(2)(C)'s jurisdictional bar precludes substantial-evidence review of the agency's factual determinations. *Ventura-Reyes v. Lynch*, 797 F.3d 348, 359 (6th Cir. 2015).

In *Shabo v. Sessions*, 892 F.3d 237, 241 (6th Cir. 2018), this court held that whether an alien has shown "a probability of future torture" is a factual issue subject to § 1252(a)(2)(C)'s jurisdictional bar. *Shabo*'s holding was in the context of an application for CAT protection. *See* 892 F.3d at 240. But we see no principled basis for distinguishing the probability of future harm in the CAT context from the probability of future harm in withholding of removal cases. We review both issues under the substantial evidence standard. *See Amezola-Garcia v. Lynch*, 846 F.3d 135, 142 (6th Cir. 2016); *Cruz-Samayoa v. Holder*, 607 F.3d 1145, 1155–56 (6th Cir. 2010). The substantial evidence standard is what we apply to the agency's *findings of fact*. *See, e.g.*,

*Parlak v. Holder*, 578 F.3d 457, 462 (6th Cir. 2009). And in the context of withholding of removal cases, this court has expressly characterized the likelihood of harm as a factual issue. *See Kamar*, 875 F.3d at 817–21 ("The probability of harm occurring in these cases is an inference based on facts in the record."). In sum, *Shabo*'s holding applies to Ishac's withholding of removal claim as well as his claim for CAT protection.

*Shabo* does not stand for the proposition that the jurisdictional bar precludes *any* challenge to the agency's determination that an alien is ineligible for withholding of removal or CAT protection. An alien may still contest the BIA's resolution of legal questions. *Tran v. Gonzales*, 447 F.3d 937, 943 (6th Cir. 2006). But Ishac offers no sustained argument as to how, accepting as true the agency's factual conclusions regarding the likelihood that he would suffer harm in Iraq, the agency then misapplied any of the "legal requirements for relief." *See In re Z-Z-O-*, 26 I. & N. Dec. 586, 590–91 (B.I.A. 2015). Instead, Ishac's briefing consists largely of identifying the evidence in the record favoring his claims and suggesting that the BIA and IJ erred in their prognoses regarding his treatment if removed to Iraq. His claim that the evidence "is sufficient to establish a clear probability of persecution or torture" rests entirely on our reweighing the evidence in his favor. We lack jurisdiction to conduct such an inquiry. *Shabo*, 892 F.3d at 241.

Ishac also cites *Johns v. Holder*, 678 F.3d 404, 407 (6th Cir. 2012), for the proposition that we have jurisdiction to conduct substantial-evidence review of the agency's factual findings. *Johns* involved a different jurisdictional bar, which precluded review of any decision "the authority for which is specified under this subchapter to be in the discretion of the Attorney General." *See id.* at 405 (quoting 8 U.S.C. § 1252(a)(2)(B)(ii)). *Johns* held that, notwithstanding the jurisdictional bar, we could conduct substantial-evidence review of the agency's decision that the

petitioner's marriage was not bona fide, so long as we did not "second guess[] [the agency's] weight and credibility decisions." *Id.* at 407.

Our published decisions have applied *Johns*' substantial-evidence holding only in its original context. *See Al-Saka v. Sessions*, 904 F.3d 427, 430–31 (6th Cir. 2018). *But see Maharaj v. Holder*, 604 F. App'x 453, 456 (6th Cir. 2015) (relying on *Johns* for the rule that whether substantial evidence supported the BIA's finding is a "question[] of law over which we have jurisdiction"); *Mendez v. Lynch*, 613 F. App'x 529, 534 (6th Cir. 2015) ("If we construe Gonzalez's petition as raising the legal claim that substantial evidence did not demonstrate his ineligibility for cancellation of removal, we would have jurisdiction to review such a claim." (citing *Johns*, 678 F.3d at 407)). But even if *Johns* applied, this would not help Ishac. As noted above, Ishac's arguments go to the weight the agency gave to various pieces of evidence. With evidence on both sides, the agency gave more weight to the Attorney General's evidence suggesting that Ishac could safely reside in Iraq. If we cannot question the agency's weighing of the evidence—and even under *Johns*, we cannot—it would be impossible to say that the evidence compels the conclusion that the agency erred. 8 U.S.C. § 1252(b)(4)(B) (providing that an agency's factual findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary").

## B. Legal Questions

We may review Ishac's petition to the extent it "raise[s] constitutional issues or questions of law," *Ventura-Reyes*, 797 F.3d at 356, and Ishac raises several. We address, first, Ishac's legal challenges to the BIA's dismissal of his appeal and, second, his legal challenges to the BIA's denial of his motion to remand.

### 1. BIA Appeal

Ishac claims that the BIA and IJ violated controlling Sixth Circuit precedent that prohibits removal of Chaldean Christians to Iraq. Ishac cites *Yousif v. Lynch*, 796 F.3d 622, 628 (6th Cir.

2015), for the proposition that an alien's "status as a Christian alone entitles him to withholding of removal, given that there is 'a clear probability' that he would be subject to future persecution if returned to contemporary Iraq." But this court's statement in *Yousif* was based on the Attorney General's concession in that case that, "in December 2011 . . . conditions in Iraq for Chaldean Christians were so turbulent that Yousif was entitled to withholding of removal." *Id*. at 625. *Yousif* did not establish an entitlement to withholding of removal for all time, nor could it. As *Yousif* itself noted, the "validity of [a] withholding claim w[ill] fluctuate over time" and is determined "at the time of adjudication." *Id*. at 632. Here, the Attorney General has contested Ishac's present entitlement to withholding of removal, arguing that conditions for Christians in Iraq have improved. *Yousif*, therefore, does not entitle Ishac to relief as a matter of law. And it in no way conflicts with the IJ's 2018 determination that, given ISIS's diminished influence, Ishac had not demonstrated a probability of torture or persecution because of his Christian faith.

Ishac also claims that the BIA's decision in his case was inconsistent with three other BIA decisions and one IJ order involving similarly situated Chaldean Christians facing removal to Iraq. *See In re T.H.H.* (B.I.A. Aug. 27, 2018) (granting Chaldean Christian's appeal and remanding for IJ to consider up-to-date evidence regarding conditions in Iraq) (Pet'r App'x A); *In re T.H.H.* (I.J. Oct. 3, 2018) (granting CAT protection to Chaldean Christian based on evidence of likely torture) (Pet'r App'x B); *In re Y.D.* (B.I.A. July 30, 2018) (granting Chaldean Christian's motion to remand based on evidence of abuse and harassment of Christians in Iraq) (Pet'r App'x C); *In re S.D.* (B.I.A. June 25, 2018) (granting Chaldean Christian's motion to remand for consideration of new evidence of persecution and torture in Iraq) (Pet'r App'x D). This is not technically a claim that the BIA violated its own precedent; these decisions are unpublished and, therefore, not formally binding on the agency. *See In re Medrano*, 20 I. & N. Dec. 216, 220 (B.I.A. 1990) ("Decisions which the

[BIA] does not designate as[ ]precedents are not binding on the Service or the immigration judges in cases involving the same or similar issues."). Rather, Ishac's claim is that the BIA acted arbitrarily by denying his appeal while granting relief to other similarly situated Chaldean Christians.

As this court has noted before, the BIA's "discretion is broad but it is not unlimited. It may not exercise its discretion in a way that is arbitrary, irrational or contrary to law." *Daneshvar v. Ashcroft*, 355 F.3d 615, 625–26 (6th Cir. 2004). In *Hanna v. Mukasey*, 290 F. App'x 867, 872–73 (6th Cir. 2008), this court granted a petition for review and remanded for the BIA to explain why it had denied the petitioner's motion to reopen based on worsening conditions for Iraqi Christians in April 2007 when it had granted similar motions in June and August of 2006. This court acknowledged that the agency's decision to reopen immigration proceedings is discretionary. *Id.* But we stressed that the BIA's failure to explain the differing outcomes raised an inference of arbitrary decisionmaking. *See id.* (explaining that the BIA "does not have the discretion to make such decisions arbitrarily"); *see also Kiegemwe v. Holder*, 427 F. App'x 473, 482 (6th Cir. 2011) ("[T]he BIA's denial of [petitioners'] asylum applications in the face of its grant of Lusingo's application violated the fundamental legal principle—and the BIA's own policy—that similarly-situated individuals should be treated similarly."); *Zhang v. Gonzales*, 452 F.3d 167, 174 (2d Cir. 2006) ("A rational system of law would seem to require consistent treatment of such identical claims, or, at the very least, an explanation from the BIA for their seemingly inconsistent treatment."); *Davila-Bardales v. INS*, 27 F.3d 1, 5 (1st Cir. 1994) ("[E]ven if [unpublished BIA decisions] are not 'precedent' in the technical sense, the prospect of a government agency treating virtually identical legal issues differently in different cases, without any semblance of a plausible explanation, raises precisely the kinds of concerns about arbitrary agency action that the

consistency doctrine addresses . . . ."). We cannot say, therefore, that there is no possible legal basis for Ishac's claim.

We need not decide the relationship between the agency's limited publication rule and the "consistency doctrine," *see Davila-Bardales*, 27 F.3d at 5, however, because here the reasons for the inconsistent outcomes are readily apparent. Specifically, three of the unpublished decisions relied on the 2017 State Department Reports as evidence of torture that warranted either remand or relief. *See In re T.H.H.* (Pet'r App'x A, p. 2); *In re T.H.H.* (Pet'r App'x B, pp. 2–3); *In re Y.D.* (Pet'r App'x C, p. 3).[4] Although Ishac submitted the same reports in his later-filed motion to remand, that evidence was never presented to the IJ and so cannot constitute a basis for reversing the IJ's decision. Similarly, in Ishac's case the IJ ruled that two of Ishac's proffered experts, Rebecca Heller and Daniel Smith, did not qualify as experts on contemporary conditions in Iraq; the IJ, therefore, gave lesser weight to their testimony. Ishac's lawyer before the IJ offered no sustained objection to these decisions, instead "leav[ing] it to the court's discretion whether or not to admit" the evidence as expert testimony. By contrast, in the unpublished decisions Ishac cites, the petitioners' lawyers contested the IJ's decisions not to qualify these same witnesses as experts, and the BIA sustained their challenges on appeal. *See, e.g.*, *In re T.H.H.* ("[W]e respectfully conclude that Ms. Heller and Mr. Smith's credentials are not qualitatively or considerably different from those that were deemed experts. On remand, therefore, the [IJ] should consider [them] as expert witnesses and afford their testimony due weight.") (Pet'r App'x A, p. 2). As we explain below, the newly presented 2017 State Department Reports and prior counsel's failure to meaningfully object to the IJ's expert-witness determinations are not irrelevant; but they implicate

---

[4] In *In re S.D.*, the BIA did not specify what evidence the petitioner had included in his motion to remand, stating only that it included "extensive additional country conditions evidence" as well as expert witness affidavits. (Pet'r App'x D, p. 5).

Ishac's motion to remand—not the BIA's disposition of his appeal. Accordingly, we deny Ishac's petition for review insofar as it challenges the BIA's denial of his appeal from the IJ's decision.

## 2. Motion to Remand

We review the BIA's denial of a motion to remand for an abuse of discretion. *Fieran v. INS*, 268 F.3d 340, 344 (6th Cir. 2001). The BIA abuses its discretion if its decision was made "without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination." *Ahmed v. Mukasey*, 519 F.3d 579, 585 (6th Cir. 2008). But § 1252(a)(2)(C)'s jurisdictional bar remains in force, so we review Ishac's challenge only to the extent it implicates questions of law.

Ishac claims that the BIA erred in denying his motion to remand based on his prior counsel's ineffective assistance. The BIA has created a mechanism to remedy attorney failures that are both egregious and prejudicial. *See In re Lozada*, 19 I. & N. Dec. 637, 638–39 (B.I.A. 1988); *see also In re Compean*, 25 I. & N. Dec. 1, 1–2 (U.S. Att'y Gen. 2009) (reinstating the *Lozada* framework).[5] Under the *Lozada* framework, an alien alleging ineffective assistance of counsel in immigration proceedings must first meet certain procedural requirements; the alien "must file an affidavit explaining the errors made by his lawyer, confirm that the lawyer knows about the claim, and state whether the individual filed a grievance with the appropriate state bar disciplinary authority." *Al-Saka*, 904 F.3d at 432. The alien must then establish that prejudice resulted from the attorney's conduct. *Sako v. Gonzales*, 434 F.3d 857, 865 (6th Cir. 2006). Here, Ishac argued that his prior counsel was ineffective because he did not reapply for cancellation of

---

[5] Ishac also asserts a right to effective assistance of counsel apart from *Lozada* under the Fifth Amendment's Due Process Clause. Acknowledging this court's opinion in *Al-Saka v. Sessions*, 904 F.3d 427 (6th Cir. 2018), Ishac says he is merely "preserving this issue for further review." In any event, Ishac presses no due process claim that differs from his claim under the *Lozada* framework.

removal, failed to submit readily available country conditions evidence, did not file a witness list, confused the standards for asylum and withholding of removal, and never cited controlling precedent. The BIA found that Ishac had "substantially complied" with *Lozada*'s procedural requirements but held that Ishac had not met his burden to establish prejudice. The BIA's reasoning does not withstand scrutiny.

We begin with Ishac's claim that his prior counsel provided ineffective assistance by failing to apply for cancellation of removal. The BIA offered two reasons for concluding that this failure was not prejudicial. First, the BIA stated that "the evidence does not establish [Ishac's] prima facie eligibility for cancellation of removal." Second, the BIA noted that Ishac had been denied cancellation of removal in 2006 and concluded that prior counsel's "decision to focus on withholding of removal and protection under the [CAT] was a permissible tactical choice."

We find neither basis for denying Ishac's motion to be a rational explanation. *Ahmed*, 519 F.3d at 585. The Attorney General has not contested Ishac's eligibility for cancellation of removal. Under 8 U.S.C. § 1229b(a), an individual is eligible for cancellation of removal if he has been a lawful permanent resident for at least five years, has resided continuously in the United States for seven years, and has not been convicted of an aggravated felony. In 2006, DHS counsel stipulated that Ishac met those requirements, and the Attorney General has not suggested that Ishac's circumstances have changed. The BIA's assertion that Ishac is not eligible for relief, therefore, appears erroneous, and the Attorney General does not seek to justify that conclusion on appeal.

The Attorney General instead focuses on the BIA's claim that Ishac's counsel's failure to apply for cancellation of removal was a "permissible tactical choice." But what was the tactic? The BIA does not explain. The Attorney General relies on *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009), for the proposition that it is not ineffective assistance to pursue "a claim that stood

almost no chance of success." *See id.* at 127 (explaining that counsel "is not required to have a tactical reason—above and beyond a reasonable appraisal of a claim's dismal prospects for success—for recommending that a weak claim be dropped altogether"). But assuming this was indeed the BIA's rationale, *see SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947), why is it that Ishac's claim had "dismal prospects for success"? In 2006, a different IJ denied Ishac cancellation of removal, but that was largely because Ishac had, at that time, shown few signs of rehabilitation and had instead violated his probation. But that was thirteen years ago, and Ishac attests that since then he has had a clean record and that his conduct has demonstrated his rehabilitation. The Attorney General does not provide any evidence to dispel this claim. So, on this record, the strongest factor supporting the first IJ's denial of cancellation of removal has been greatly diminished. *Cf. In re C-V-T-*, 22 I. & N. Dec. 7, 12 (B.I.A. 1998) (explaining that "a showing of rehabilitation is not an absolute prerequisite in every case involving an alien with a criminal record" but that evidence of rehabilitation "will ordinarily be required").

Published BIA decisions regarding cancellation of removal further undermine the Attorney General's assertion that Ishac's application for cancellation of removal "stood almost no chance of success." An IJ considering a qualified applicant for cancellation of removal must assess favorable considerations, such as "family ties within the United States, residence of long duration in this country (particularly when the inception of residence occurred at a young age), evidence of hardship to the respondent or his family if deportation occurs, . . . [and] proof of genuine rehabilitation if a criminal record exists." *C-V-T-*, 22 I. & N. Dec. at 11 (reaffirming standards articulated in *In re Marin*, 16 I & N Dec. 581 (B.I.A. 1978)). An IJ must weigh the positive factors against negative ones such as "additional significant violations of this country's immigration laws, the existence of a criminal record and, if so, its nature, recency, and seriousness, and the presence

of other evidence indicative of a respondent's bad character or undesirability as a permanent resident of this country." *Id.*

Considering these factors, as the BIA has assessed them in its precedents, Ishac's claim for cancellation of removal seems far from hopeless. The IJ found Ishac credible; his family resides in the United States and he has no family in Iraq; his lawful "residence [is] of long duration in this country," almost forty years, beginning when he was only two months old; in fact, he has never been to Iraq, does not speak Arabic, and even the government's witnesses acknowledged "that life would be difficult" for returning Iraqi Christians; and, significantly, his rehabilitation appears genuine.[6] *Id.* There is no evidence, moreover, that Ishac has committed "additional significant violations of this country's immigration laws;" his crimes (which the government has not asserted to be "aggravated felonies") were long ago; and the Attorney General has not pointed to any "evidence indicative of [Ishac's] bad character or undesirability." *Id.*

After reviewing the BIA's published precedents in this area, we see nothing in them to doom Ishac's claim; indeed, his claim seems to compare favorably with those applications the BIA has granted. *Compare In re Sotelo-Sotelo*, 23 I. & N. Dec. 201, 204–05 (B.I.A. 2001) (denying relief for Mexican national with recent convictions and prison sentence for alien smuggling involving "repeated disregard for lawful immigration procedures") and *In re Burbano*, 20 I. & N. Dec. 872, 876 (B.I.A. 1994) (denying relief for Colombian national whose testimony was not credible, whose criminal history was lengthy and recent, and for whom any "adverse effect of deportation upon [him] and his family will [not] exceed that typically suffered by a family in this

---

[6] It is also quite possible that Ishac's mother, now a widow, or other family would face significant hardship if Ishac is deported to Iraq, further strengthening his case for cancellation of removal. We do not know whether this is the case, however, because Ishac's initial attorney failed to submit a witness list, preventing testimony on these points.

situation"), *with C-V-T-*, 22 I. & N. Dec. at 14 (granting relief for Vietnamese national convicted of relatively minor drug offense who, despite being presently confined and therefore lacking evidence of rehabilitation, nonetheless "presented significant equities" favoring relief, including fifteen years' lawful residence in the United States and steady work history) and *In re Arreguin De Rodriguez*, 21 I. & N. Dec. 38, 42–43 (B.I.A. 1995) (granting relief to Mexican national despite conviction for serious drug offense, given her lesser role in the crime, efforts toward rehabilitation, and other equities including twenty years' lawful residence in the United States, employment history, and family ties).  Given these precedents, it is hard to accept the unexplained conclusion that it was a reasonable tactical choice to forego applying for cancellation of removal to focus instead on avenues for relief that required a more demanding sort of proof—a "clear probability" of persecution or torture.  *Cf. Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000) ("The relevant question is not whether counsel's choices were strategic, but whether they were reasonable.").

Ishac's prior counsel's numerous errors further undermine the inference that not applying for cancellation of removal was strategic.  Ishac's former attorney failed to submit available country conditions evidence; he failed to submit a witness list, which appears to have prevented Ishac's family and friends from testifying on his behalf; and his arguments to the IJ revealed confusion regarding the distinct legal standards governing asylum and withholding of removal.[7] The BIA dismissed these mistakes, stating that Ishac "was afforded the opportunity to submit

---

[7] We can add to this litany of errors prior counsel's failure to vigorously contest the IJ's determinations discounting the affidavits by Heller and Smith on the ground that they did not qualify as experts.  As explained above, the significance of these evidentiary determinations is apparent from the unpublished decisions Ishac cites, concerning the treatment of these same witnesses.  In one of these, the IJ stated that "[g]iving greater weight to Respondent's witnesses—finding that they were not only percipient witnesses but in fact experts—considerably change[d] the Court's evaluation of the case." *In re T.H.H.* (Pet'r App'x B, p. 2).  The IJ went on to grant CAT protection for the Chaldean Christian petitioner.

evidence and testify in support of his claim" and that the additional evidence submitted in support of Ishac's motion to remand would not have changed the outcome of the hearing. The BIA offered scant explanation for *why* this was the case, however, relying instead on its earlier conclusion that the additional evidence Ishac submitted on appeal did not, by itself, justify a remand.

But the BIA's conclusion regarding the new evidence was likewise cursory, and, in at least one instance, plainly erroneous. Reviewing the evidence submitted by Ishac on appeal, the BIA asserted that a declaration by Mark Lattimer, an expert on the human rights situation in Iraq, was a "duplicate[]" of the evidence presented to the IJ. That is wrong. The IJ considered two affidavits by Lattimer, one dated June 14, 2017, another dated June 20, 2017. But the Lattimer affidavit submitted in support of Ishac's motion to remand was dated November 22, 2017, and this affidavit focused particularly on the "[c]ontinuing risk to civilians in Iraq following military successes against ISIS." Therefore, not only was the BIA wrong to say that the evidence was merely duplicative of that which had been previously submitted, but the non-duplicative affidavit squarely addressed one of the IJ's primary reasons for denying Ishac's claims for relief—namely, the lack of evidence showing that dangerous conditions persisted "following military successes against ISIS."

Perhaps even more concerning than the BIA's confusion about the Lattimer affidavit was its failure to address the 2017 State Department Reports submitted, for the first time, in support of Ishac's motion for remand. Like the Lattimer affidavit, these documents speak directly to the safety of Christians *following* military victories against ISIS in mid-2017. And Ishac based his motion to remand largely on these materials. Here, too, "the BIA failed to demonstrate that it evaluated or analyzed the evidence presented to it by [the petitioner]. Instead, the BIA summarily

concluded that [the petitioner's] evidence was insufficient . . . ." *Preçetaj v. Sessions*, 907 F.3d 453, 458 (6th Cir. 2018).[8]

When the BIA "does not articulate a reasoned basis for rejecting the motion or fails to consider all the aspects of the petitioner's claim, it has abused its discretion." *Id.* at 459 (quoting *Habchy v. Filip*, 552 F.3d 911, 915 (8th Cir. 2009)). By failing to offer "a reasoned basis" for denying Ishac's motion to remand based on his counsel's ineffective assistance and by not "consider[ing] all the aspects of the petitioner's claim," the BIA abused its discretion here. We readily acknowledge that cancellation of removal is a discretionary remedy and that the BIA has broad discretion to deny motions to remand. But as this court recently explained, "simply because the [BIA] *may* reach the same result upon remand (and of course, it may not) does not render the [BIA's] action 'harmless.'" *Preçetaj*, 907 F.3d at 459.

\* \* \*

For the foregoing reasons, we DENY in part and GRANT in part the petition for review, and we remand to the agency for proceedings consistent with this opinion.

---

[8] The BIA's elision of the 2017 State Department Reports is even more concerning given that three of the unpublished decisions discussed in the previous section cited these documents as evidence of torture that warranted either remand or relief for Chaldean Christians facing removal to Iraq. *See In re T.H.H.* (Pet'r App'x A, p. 2); *In re T.H.H.* (Pet'r App'x B, pp. 2–3); *In re Y.D.* (Pet'r App'x C, p. 3). It is entirely possible, of course, that there are other unpublished decisions involving similarly situated petitioners who relied on the 2017 State Department Reports but whose applications for relief were *denied* for some reason common also to Ishac's application. *See Hanna*, 290 F. App'x at 873. But the Attorney General has not pointed to any such decisions; and we have not been able to locate any. As it turns out, most unpublished decisions of the BIA do not appear readily available at all. It seems that the reason Ishac was able to point to the four decisions we have discussed is that his current lawyer, Russell Abrutyn, also represented the petitioners in those cases. Again, we acknowledge that the BIA has not designated unpublished decisions as precedent. But as the First Circuit has explained, "even if [they] are not 'precedent' in the technical sense, the prospect of a government agency treating virtually identical legal issues differently in different cases, without any semblance of a plausible explanation" is concerning. *Davila-Bardales*, 27 F.3d at 5.